UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JANELLE LYNN BONADONNA-MILLARD,

       Plaintiff,

v.

                 18-CV-782

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

## DECISION AND ORDER

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. No. 14. Janelle Lynn Bonadonna-Millard ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for benefits. This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. Nos. 9, 12. For the following reasons, Plaintiff's motion (Dkt. No. 9) is denied, and the Commissioner's motion (Dkt. No. 12) is granted.

## BACKGROUND

On July 18, 2014, Plaintiff filed for Supplemental Security Income ("SSI"), alleging disability beginning on March 19, 2014, due to Obsessive Compulsive Disorder, Anxiety Disorder, Panic Disorder, Agoraphobia, "fear of driving," and "symptoms of bi-

polar." Tr. at 70-71.[1] Plaintiff's application was denied at the initial level and she requested review. Tr. at 79, 91. Administrative Law Judge Elizabeth Ebner ("the ALJ") conducted a hearing on January 31, 2017. Tr. at 34. Plaintiff, who was represented by counsel, testified as did an impartial vocational expert. Tr. at 38-68. On May 2, 2017, the ALJ issued a decision in which she found that Plaintiff was not disabled and therefore, not eligible for benefits. Tr. at 10-33. The Appeals Council denied Plaintiff's request for review, making the ALJ's determination the final decision of the Commissioner. Tr. at 1, 147. Plaintiff thereafter commenced this action seeking review of the Commissioner's decision. Dkt. No. 1.

## **LEGAL STANDARD**

**Disability Determination**

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act. *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe," meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of

---

[1] Citations to "Tr. __" refer to the pages of the administrative transcript, which appears at Docket No. 5.

2

impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals a Listings criterion and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If not, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

**District Court Review**

42 U.S.C. § 405(g) authorizes a district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2007). Section 405(g) limits the scope of the Court's review to two inquiries: whether the Commissioner's conclusions were based upon an erroneous legal standard, and whether the Commissioner's findings were supported by substantial evidence in the record as a whole. *See Green-Younger v. Barnhart*, 335 F.3d 99, 105-106 (2d Cir. 2003). Substantial evidence is "more than a mere scintilla." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir. 2009). "It means such *relevant* evidence as a *reasonable* mind might accept as adequate to support a conclusion." *Id.* (emphasis added and citation omitted). The substantial evidence standard of review is a very deferential standard, even more so than the "clearly erroneous" standard. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 447-48 (2d Cir. 2012) (citing *Dickinson v. Zurko,* 527 U.S. 150, 153 (1999)).

When determining whether the Commissioner's findings are supported by substantial evidence, the Court's task is "'to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). If there is substantial evidence for the ALJ's determination, the decision must be upheld, even if there is also substantial evidence for the Plaintiff's position. *See Perez v. Chater,* 77 F.3d 41, 46-47 (2d Cir. 1996); *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 384 (W.D.N.Y. 2015). Likewise, where the

evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

## **DISCUSSION AND ANALYSIS**

**The ALJ's Decision**

The ALJ analyzed Plaintiff's claims using the familiar five-step process described above. *Lynch v. Astrue*, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since March 19, 2014, her alleged onset date. Tr. at 15. At step two, she found that Plaintiff had the following severe impairments: anxiety disorder; panic disorder with agoraphobia; affective disorder; history of "minimally active" ulcerative colitis in clinical remission; history of hyperactive gallbladder status-post gallbladder removal surgery; and hypothyroidism. Tr. at 15-16.[2] The ALJ noted that Plaintiff reported that she recently suffered a seizure while working out at the gym, but that her examining neurologist found that the episode was "almost certainly" a syncopal event and not a seizure.[3] Tr. at 15-16, 326. The ALJ noted that she accommodated Plaintiff's historical syncope by requiring that she never climb stairs, ropes, or scaffolds, never drive as a work duty, and avoid all exposure to hazards such as unprotected heights and dangerous moving mechanical parts. Tr. at 16.

---

[2] This Court presumes the parties' familiarity with plaintiff's medical history, which is summarized at length in the papers.

[3] "Syncope . . . is the medical term for fainting or passing out. It is caused by a temporary drop in the amount of blood that flows to the brain." *See https://my.clevelandclinic.org/health/diseases/17536-syncope.*

At step three, the ALJ concluded that Plaintiff's impairments did not, either individually or in combination, meet or equal the Listings, giving special consideration to Listing 5.06 (Inflammatory Bowel Disease) and related gastrointestinal disorders, Listing 9.00 (Endocrine Disorders); Listing 12.04 (Depressive, Bipolar and Related Disorders) and 12.06 (Anxiety and Obsessive-Compulsive Disorders), as well as Social Security Ruling 02-1p (Obesity). Tr. at 16-19. Next, the ALJ found that Plaintiff retained the RFC to perform light work as defined by 20 C.F.R. § 416.967(b). Specifically:

> She can lift, carry, push and/or pull up to 20 pounds occasionally and ten pounds frequently, and can sit for up to six hours and stand and/or walk for up to six hours in an eight-hour workday. She can never climb ladders, ropes, or scaffolds, work around unprotected heights or dangerous moving mechanical parts or operate a motor vehicle as part of a work duty. The claimant can perform simple, routine, repetitive tasks not at an assembly line pace involving simple work-related decisions, occasional changes in work setting, occasional interaction with co-workers and supervisors, and no interaction with the public. She would be further off-task up to five percent of an eight-hour workday in addition to normal breaks.

Tr. at 19.

Continuing to the fourth step, the ALJ found that Plaintiff was unable to perform her past relevant work. Tr. at 28. Based on Plaintiff's age (35 years old), education (at least a high school education), and with the aforementioned RFC, the ALJ found that she could perform work that exists in significant numbers in the national economy, specifically, the jobs of price marker (DOT No. 209.5887-034), garment sorter (DOT No. 222.687-014), and routing clerk (DOT No. 222.587-038). Tr. at 28-29. Accordingly, concluded the ALJ, Plaintiff was not under a disability from March 19, 2014, through the date of her decision, May 2, 2017. Tr. at 29.

6

**Judgment on the Pleadings**

As noted above, the parties have cross-moved for judgment on the pleadings. Dkt. Nos. 9, 12. Plaintiff contends that the ALJ made her RFC finding "with no medical opinion after rejecting both the consultative examiner and non-examining opinions," failed to develop the record, "ignored other source opinion statements from [Nurse Practitioner Melissa A.] Merlin," and "cherry picked evidence from Plaintiff's treatment notes."[4] Dkt. No. 9-1, pp. 17-30. The Commissioner contends that in formulating the RFC, the ALJ: properly afforded "little weight" to the opinions of Plaintiff's treating providers and "some weight" to the consulting examining opinion and the GAF scores of record, and because she did not reject the opinions outright, did not create a gap in the record; considered NP Merlin's opinions and incorporated a stress limitation into the RFC that was consistent with those opinions; and considered the totality of the evidence (Dkt. No. 12-1, pp. 7-15). Having reviewed the record, this Court finds that the ALJ did not err and that the RFC was substantially supported.

**The ALJ's Assessment of the Medical Opinions**

Plaintiff alleges that the ALJ "played doctor" by rejecting all of the medical opinions in the record and giving her own lay interpretation of the medical evidence. Dkt. No. 9-1, pp. 17-22. This Court does not agree. As an initial matter, it is inaccurate to state that the ALJ outright rejected any of the medical opinions in her decision. Rather, the ALJ assigned varying degrees of weight to the opinions based on the consistency of the

---

[4] Plaintiff has not raised any objections to the ALJ's findings about her physical impairments. Although this Court has reviewed the record in its entirety, this decision focuses solely on the medical evidence relating to Plaintiff's alleged mental disorders and her ability to handle stress.

7

opinion with the record as a whole. For example, she gave "little weight" to the opinions of Plaintiff's treatment providers at Suburban Psychiatric Associates (Tr. at 260-298, 330-394) that she "should stay out of work or work only on a part-time basis," reasoning that: the providers "ha[d] not opined that she [was] unable to perform other types of work, such as unskilled, repetitive, low contact work" as designated in the RFC; "claimant's reported activities[5] during the period under review demonstrate a notably higher level of function than she has alleged;" she had not participated in any inpatient treatment or highly structured intensive mental health programs, "despite her reports of disabling symptoms;" and her "GAF scores[6] ranging from 52 to 66 throughout the period . . . indicate only mild to moderate symptoms and functional limitations and are inconsistent with disabling impairments." Tr. at 26-27.

The ALJ explicitly assigned "some weight" to the opinion of consulting examiner, Janine Ippolito, Psy.D., that Plaintiff "had no limitations in her ability to follow and understand simple directions and instructions, perform simple and complex tasks independently, maintain attention and concentration, learn new tasks, and make appropriate decisions; moderate limitations maintaining a regular schedule, moderate to marked limitations relating adequately with others; and marked limitations dealing with stress." Tr. at 22. The ALJ likewise gave only "some weight" to the February 2015 opinion from the state agency consultant who concluded that "claimant had no more than moderate limitations and could perform work tasks with limited social contact." Tr. at 23,

---

[5] Plaintiff's activities are discussed more at length below.
[6] Global Assessment of Functioning ("GAF") scores measure how much a person's psychological symptoms impact his or her daily life at a given time.

77. In giving these opinions "some weight," the ALJ "also relied upon the longitudinal treatment notes of record and the claimant's documented activities and functioning over time. . [,]" which while not entirely inconsistent with the opinions, "support different functional restrictions." Tr. at 23. The ALJ apparently found that Plaintiff was more restricted than the consulting doctors suggested as the RFC specified that she perform only "simple, routine, repetitive tasks not at an assembly line pace involving simple work-related decisions . . . , [only] occasional interaction with co-workers and supervisors, and no interaction with the public." Tr. at 19.

The ALJ also relied on Plaintiff's GAF scores, which are considered medical opinions by the Commissioner. SSA Administrative Message 13066 ("AM–13066") (effective July 22, 2013); *see Craig v. Colvin*, 659 F. App'x 381, 382 (9th Cir. 2016) (stating that "the Social Security Administration (SSA) has endorsed the[ ] use [of GAF scores] as evidence of mental functioning for a disability analysis"). Plaintiff's scores measured between 52 and 66 during the relevant period, reflecting mild to moderate symptoms and functional difficulties, rather than disabling ones. Tr. at 23. The ALJ noted that despite her alleged mental impairments, Plaintiff went on vacation, attended concerts and festivals, went to family gatherings, went out to dinner with friends and family, went to the gym (sometimes on a daily basis), and hosted gatherings in her home. Tr. at 23 (citing Tr. at 281, 334, 343, 346, 349, 352, 355, 358, 367, 370, 373, 379). It was permissible for the ALJ to consider these activities of daily living in assessing Plaintiff's RFC. 20 C.F.R. §§ 404.1529, 416.929; *see Cruz v. Colvin*, 278 F. Supp. 3d 694, 699 (W.D.N.Y. 2017) (holding that an ALJ may discount a treating physician's opinion that a claimant is greatly

restricted based on that claimant's activities of daily living); *Poupore v. Astrue,* 566 F.3d 303, 307 (2d Cir. 2009) (holding that the ALJ correctly found that Poupore was not disabled because he was able to care for his one-year-old child, change diapers, vacuum, wash dishes, occasionally drive, watch television, read, and use the computer).

Based on the foregoing, this Court finds that the ALJ did not err in weighing the medical opinions, and assigning more weight to certain opinions than others. It is, in fact, the role of the ALJ to compare specific medical opinions against the record as a whole. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). The law is clear that an ALJ's RFC finding does not need to be based on a particular medical opinion or medical source statement. *Monroe v. Berryhill*, 676 F. App'x 5, 9 (2d Cir. 2017); *see also Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 1013) (reasoning that "[a]lthough the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in h[er] decision, [s]he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole"). Moreover, "the ultimate finding of whether a claimant is disabled and cannot work . . . [is] reserved to the Commissioner." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (internal quotations and citations omitted).

Because the ALJ did not, in fact, reject all of the medical opinions in the record as Plaintiff has alleged, it cannot be said that there was an "obvious gap" in the record, which the ALJ was duty-bound to develop. *See Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (holding that "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under

no obligation to seek additional information in advance of rejecting a benefits claim"). Accordingly, the ALJ did not commit reversible error with respect to the record.

**Nurse Practitioner Merlin's Opinions**

Plaintiff contends that the ALJ "ignored" NP Merlin's opinions regarding her mental capacity for work. This argument is also unavailing. As Plaintiff conceded, NP Merlin is not an acceptable medical source and, therefore, her opinion is not entitled to the same deference as other opinions considered by the ALJ. 20 C.F.R. § 404.1502(a) (setting forth the list of acceptable medical sources, which does not include nurse practitioner); 20 C.F.R. § 404.1527(a)(1) (defining "medical opinions" as "statements from acceptable medical sources . . ."); 20 C.F.R. § 404.1527(c)(2). Moreover, an ALJ is not required to discuss every piece of evidence submitted; and the failure to cite specific evidence, standing alone, does not indicate that such evidence was not considered. *Brault*, 683 F.3d at 448 (2d Cir. 2012).

Notwithstanding the foregoing, the ALJ clearly considered NP Merlin's treatment records, making repeated references to her treatment notes in the decision, although not citing to the NP by name. For example, the ALJ stated, "[it] has been noted that the claimant's symptoms are 'manageable' when her stress levels are low and exacerbated when they are high," citing to notes made by NP Merlin in June of 2015. Tr. at 24 (citing Tr. at 355); *see also* Tr. 20 (citing NP's notes on 4/11/14 that Plaintiff was in "moderate distress" on examination (Tr. at 261-261); stating on 4/25/14 that Plaintiff appeared to be in "mild distress" (Tr. at 264-66); observing on 6/11/2014 that Plaintiff was

"less anxious and brighter" (Tr. at 270-73)). Most importantly, the ALJ incorporated stress limitations into Plaintiff's RFC, thereby addressing NP Merlin's concerns that new or unexpected stressors would exacerbate Plaintiff's condition. "To reduce her stress levels," the ALJ found that Plaintiff "should be limited to work involving simple, routine, repetitive tasks involving only occasional workplace changes," only occasional interaction with her co-workers and no interaction with the general public. Tr. at 24. Accordingly, remand for consideration of NP Merlin's opinions is wholly unwarranted.

**Consideration of the Entire Record**

Plaintiff argues that the ALJ "cherry-picked" evidence that supported the RFC, while ignoring evidence that showed that Plaintiff was more restricted. Once again, the record does not support this argument. This Court finds that the ALJ fairly characterized the medical record in assessing Plaintiff's mental ability to perform basic work functions, and properly noted inconsistencies in the evidence. For example, the ALJ noted that despite allegedly debilitating symptoms, Plaintiff: regularly exercised at the gym, including swimming on a daily basis in October 2015; got married in 2016 and went on a Caribbean cruise for her honeymoon (telling her mental health providers that both "went well," but later testifying at her hearing that the honeymoon was "terrible" and "very difficult"); went on vacation on a plane to California in August of 2014; attended a concert; went to family gatherings where "there were a lot of people in attendance," went out to dinner with family and friends; made social visits to other people's homes including "larger type events;" attended weddings; and went for walks. Tr. at 23. "Although she reported anxiety and/or panic with most of these activities," the ALJ wrote, "her symptoms have not

prevented her from continuing to participate in social and community events, which tends to show a notably higher degree of social and adaptive functioning than she has alleged." Tr. at 23.

Plaintiff clearly disagrees with the ALJ's evaluation of the evidence. However, the substantial evidence standard is so deferential that "there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 127 (2d Cir. 2012). That is, "once an ALJ finds the facts, [a reviewing court] can reject those facts only if a reasonable factfinder ***would have to conclude otherwise***." *Brault*, 683 F.3d at 448 (emphasis added). This case does not present such a situation. For all of the foregoing reasons, this Court finds that the ALJ's decision is free from legal error and is supported by substantial evidence.

## **CONCLUSION**

For the reasons stated herein, Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is hereby DENIED, and the Commissioner's motion for Judgment on the pleadings (Dkt. No. 12) is GRANTED. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

DATED:	Buffalo, New York
	March 9, 2020

	*s/ H. Kenneth Schroeder, Jr.*
	**H. KENNETH SCHROEDER, JR.**
	**United States Magistrate Judge**